This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-38582**

**STATE OF NEW MEXICO,**

   Plaintiff-Appellee,

v.

**AARON DEAN CHAVEZ,**

   Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**T. Glenn Ellington, District Judge**

Hector H. Balderas, Attorney General
Laurie Blevins, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Kimberly Chavez Cook, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**MEDINA, Judge.**

**{1}**   Defendant Aaron Dean Chavez appeals his conviction of one count of criminal sexual contact of a minor (CSCM), a third degree felony, contrary to NMSA 1978, Section 30-9-13(C)(1) (2003).[1] Defendant raises the following issues on appeal: (1) the district court erred in allowing the investigating detective to vouch for the credibility of Victim and accuse Defendant of lying during his custodial interview during the detective's testimony; (2) the evidence was insufficient to support his conviction; (3) the

---

[1]The jury was unable to reach a verdict on two charges of CSCM involving two other children.

district court misinterpreted Rule 11-615 NMRA and abused its discretion when it precluded Defendant's investigator from remaining in the courtroom during trial and excluded the investigator from testifying; (4) the district court failed to provide an appropriate curative jury instruction on the element of unlawfulness; (5) the State committed prosecutorial misconduct by eliciting statements of uncharged conduct, berating Defendant during his testimony, and asking the jury to convict contrary to established law; (6) the district court imposed an incorrect sentence; and (7) the district court erred in denying his motion for a new trial. For the reasons explained below, we hold that the admission of the investigator's testimony in which he vouched for Victim's truthfulness and accused Defendant of lying during his custodial interview amounted to plain error; sufficient evidence supports Defendant's conviction; and the district court's interpretation of Rule 11-615 was an abuse of discretion. We therefore reverse and remand.

## DISCUSSION

**{2}**      We begin by addressing Defendant's argument that the detective's testimony in which he vouched for Victim and accused Defendant of lying during his custodial interview amounted to plain error, holding that it did so and that Defendant is entitled to a new trial. Because Defendant is entitled to a new trial, we next address Defendant's sufficiency of the evidence challenge to determine if retrial implicates Defendant's double jeopardy rights, and hold that there was sufficient evidence to convict Defendant of CSCM. Finally, we address Defendant's argument that the district court abused its discretion when interpreting Rule 11-615 and clarify the scope of Rule 11-615(C). We do so to avoid repetition of any similar error on remand. Because we hold that the detective's testimony amounted to plain error and that Defendant is entitled to a new trial, we do not address Defendant's remaining arguments on appeal.

## I.      Plain Error Review

**{3}**      Defendant argues that the detective's testimony vouching for the credibility of Victim and disparaging Defendant's credibility amounted to plain error, requiring a new trial. We review for plain error because Defendant did not object to this testimony. *See State v. Lucero*, 1993-NMSC-064, ¶ 12, 116 N.M. 450, 863 P.2d 1071 (noting that a defendant "may be entitled to relief if the errors of which he complains on appeal constituted plain error" (internal quotation marks and citation omitted)). "To find plain error, the Court must be convinced that admission of the testimony constituted an injustice that created grave doubts concerning the validity of the verdict." *State v. Montoya*, 2015-NMSC-010, ¶ 46, 345 P.3d 1056 (internal quotation marks and citation omitted). Plain error applies to "cases raising evidentiary matters in which the asserted error affected substantial rights." *State v. Garcia*, 2019-NMCA-056, ¶ 10, 450 P.3d 418 (internal quotation marks and citation omitted). In determining whether plain error has occurred, we "examine the alleged errors in the context of the testimony as a whole." *Id.* (internal quotation marks and citation omitted). The plain error rule is to be used sparingly as an exception to a preservation rule designed to encourage efficiency and fairness. *Id.*

**{4}**     Defendant argues, and the State concedes on appeal, that the detective improperly vouched for the credibility of Victim during his testimony. Defendant further argues that the detective improperly discredited Defendant during his testimony. In contrast, the State argues that (1) the detective's testimony in which he vouched for Victim's credibility did not qualify as plain error because the testimony did not create grave doubts about the validity of Defendant's conviction; and (2) the detective's testimony that Defendant lied during his custodial interview was not error, and even if it was, it did not qualify as plain error.

**{5}**     The detective testified that he had specialized training in investigating crimes against children and that he was trained in identifying deception or lies when interviewing individuals. Based on his observation of Victim's safe house interview and his training and experience, he testified that Victim was "consistent in her story that she had to tell" and "[the safe house interviewer] did an [excellent] job of getting disclosure[s] from the [Victim] that I was 100% confident were fact, were true."

**{6}**     The detective went on to state that Defendant "really had no interest in answering our questions or talking to us" during his interview and that Defendant's explanation of how he tucked Victim's shirt in "didn't make any sense" whereas "[Victim's] disclosure did." During cross-examination, the detective stated that after his review of Victim's statements and Defendant's interview, he concluded that Defendant was guilty.

**{7}**     On redirect examination, the detective stated "unfortunately this wasn't a complicated investigation. This was about fact and truth. We received fact and truth from [V]ictim[] in this case. And unfortunately for [Defendant], he chose to lie. A grown man chose to lie." The detective concluded his testimony by stating "[Defendant] was given two opportunities to sit down with two grown men and talk about the truth. It was a simple conversation about the truth and he chose not to do that."

**{8}**     Defendant directs us to *Lucero*, in support of his plain error argument. In *Lucero*, the expert witness, a clinical psychologist, repeated statements that the complainant made during the evaluation regarding sexual abuse, testified that the complainant had been molested, stated that the defendant was the molester, and commented directly on the complainant's credibility at trial. 1993-NMSC-064, ¶¶ 5-6. Our Supreme Court reasoned that such testimony "vouches too much for the credibility of the victim and encroaches too far upon the province of the jury to determine the truthfulness of the witnesses." *Id.* ¶ 17 (internal quotation marks and citation omitted). This concern was compounded because "[t]he only witnesses to the alleged abuse were the defendant and the complainant." *Id.* ¶ 22. "Because [the expert witness] repeated so many of the complainant's statements regarding the alleged sexual abuse by the defendant and because she commented directly and indirectly upon the complainant's truthfulness," our Supreme Court had "grave doubts concerning the validity of the verdict and the fairness of the trial." *Id.* Therefore, the Court held that the expert witness's statements amounted to plain error and reversed the defendant's conviction. *Id.*

**{9}** We found similar testimony amounted to plain error in *Garcia. Garcia* involved an expert witness, a family nurse practitioner with a specialty in child sexual abuse, who repeated the victim's statements describing the sexual assault and identifying the defendant as the individuals who committed the assault. 2019-NMCA-056, ¶ 9. The expert witness concluded that the alleged act had, in fact, occurred based only upon the victim's statements and her physical examination of the victim that revealed no physical injuries to the victim's genital area, which was consistent with the victim's description of events. *Id.* Finally, the expert witness explained what aspects of the victim's account were most compelling. *Id.* This Court held that the statements amounted to plain error because the expert witness "repeatedly commented, both directly and indirectly, upon [the v]ictim's truthfulness, identified [the d]efendant as [the v]ictim's molester numerous times based solely on [the v]ictim's statements of events, and repeated in detail [the v]ictim's statements regarding the sexual abuse." *Id.* ¶ 12.

**{10}** We are not bound to accept the State's concession that the detective's comments regarding Victim's truthfulness were improper. *See State v. Tapia*, 2015-NMCA-048, ¶ 31, 347 P.3d 738. But after reviewing the detective's statements, it is clear that he improperly commented, both directly and indirectly, on the credibility of Victim by remarking that he was certain her disclosure of the facts surrounding the CSCM were true and by repeatedly stating that Victim was consistent in her description. Similarly, the detective improperly attacked Defendant's credibility by stating that Defendant chose not to tell the truth during his interview.

**{11}** Looking at the testimony and trial as a whole, we disagree with the State's attempt to minimize the importance and impact of the detective's statements. The detective was visible to the jury during the course of trial at counsel's table, he managed the overall investigation into Defendant, and he was the last and longest of the State's witnesses during the presentation of its case in chief.

**{12}** In addition, the detective's testimony was presented through the lens of his expertise and experience in crimes against children. The effect of the testimony complained of on appeal was to vouch for Victim's credibility while simultaneously accusing Defendant of lying about the CSCM. The testimony reinforced to the jury that Defendant committed the acts described by Victim. In the absence of other evidence, such testimony "vouches too much for the credibility of the victim and encroaches too far upon the province of the jury to determine the truthfulness of the witnesses." *Garcia*, 2019-NMCA-056, ¶ 11 (internal quotation marks and citation omitted).

**{13}** Here, because credibility was pivotal to the State's case, it is likely that the jury was swayed by the detective's improper testimony. *See Lucero*, 1993-NMCA-064, ¶ 22. We therefore conclude that the admission of the above statements amount to plain error. *Compare Lucero*, 1993-NMSC-064, ¶¶ 20-22, *and Garcia*, 2019-NMCA-056, ¶ 12, *with Montoya*, 2015-NMSC-010, ¶ 49 (concluding that witness testimony did not create plain error when witness testified to child's injuries, but did not identify the defendant as causing the alleged acts or assert that the defendant caused the injuries at all, and when there was ample other evidence outside of testimony to support the jury verdict),

*and State v. Bregar*, 2017-NMCA-028, ¶¶ 43-44, 390 P.3d 212 (concluding that testimony did not create plain error when witness testified to the defendant's truthfulness for impeachment purposes and to show inconsistencies with the defendant's testimony), *and State v. Dylan J.*, 2009-NMCA-027, ¶¶ 19-20, 145 N.M. 719, 204 P.3d 44 (concluding that there was no plain error when witness only made three statements repeating what victim had stated, and did not comment on victim or defendant's credibility nor name defendant as perpetrator of acts).

{14}    Although the State did not repeat the testimony at issue during its closing argument, the State asked the jury to focus on the Victim's credibility and Defendant's "extreme lie," which relied on the testimony at issue. During its closing argument, the State reminded the jury "in voir dire, you were asked if you could [view] the evidence fairly and reach a decision in the absence of physical evidence. We are going to hold you to that. But what do we have? Well, we can start by believing [Victim]." The State further emphasized the importance of credibility during this trial and ended its closing argument by telling the jury "The sum of this case, at the end of the day, you get to decide who to believe." And "it's enough to just believe [Victim]. Please do." During its reply argument, the State told the jury "if we would rather believe extreme conspiracy theories, if we would rather take down the actions of loving, concerned parents, than to believe our children, we have no right to ask for their confidences," and that "[Defendant] asked you to believe an extreme lie when it is easier just to believe the kids."

{15}    The State dedicated a significant portion of its closing arguments to argue credibility and reinforced that the jury should believe Victim rather than Defendant. Although it did not directly quote the detective's statements, the State referenced them and placed credibility at the forefront of the jury's consideration. We have previously held that a similar circumstance supported holding that improper testimony created plain error requiring reversal. *See State v. Duran*, 2015-NMCA-015, ¶¶ 24, 27, 343 P.3d 207 (stating that although the state did not place emphasis on the testimony by quoting it, the testimony was important to the case and the testimony amounted to plain error).

{16}    Similarly, we disagree with the State's argument that the video of Defendant's custodial interview, introduced into evidence, should alter our analysis. Allowing the jury to view the video does not negate the likelihood of the jury turning to the testimony of the investigating detective to help them evaluate Defendant's credibility. Indeed, it may make that reliance more likely.

{17}    Finally, to the extent that the State argues that the statements "had little impact on the jury" because Defendant was convicted of only one count of CSCM, we disagree. The State cites nothing in support, and the argument is "based on pure conjecture as to the meaning of the jury's verdicts." *Garcia*, 2019-NMCA-056, ¶ 16 (finding the state's argument that a lack of conviction on a count charged is evidence that impermissible testimony did not sway the jury unpersuasive).

**{18}** Here, the only witnesses to the CSCM were Victim and Defendant. The State emphasized the lack of physical evidence to the jury in its closing argument, and credibility was a central issue at trial. Given this, we have grave doubts concerning the validity of the verdict and conclude that the admission of the detective's testimony in which he vouched for Victim's credibility and accused Defendant of lying during his custodial interview amounted to plain error. *See Montoya*, 2015-NMSC-010, ¶ 46. Therefore, we reverse Defendant's conviction. Whether the proper remedy is dismissal of the charge or retrial upon remand, however, is dependent on the sufficiency of the State's evidence. *See Garcia*, 2019-NMCA-056, ¶ 17.

## II.    Sufficiency of the Evidence and Double Jeopardy

**{19}** We next address Defendant's argument that there was insufficient evidence to establish his conviction for CSCM. We review Defendant's claim because the principles of double jeopardy bar retrial if Defendant's conviction is not supported by sufficient evidence. *See Garcia*, 2019-NMCA-056, ¶ 17. In our review, "we consider all the evidence admitted, even that which was wrongfully admitted." *State v. Atencio*, 2021-NMCA-061, ¶ 45, 499 P.3d 635. Applying our well-established framework for determining sufficiency of the evidence, *see State v. Ford*, 2019-NMCA-073, ¶¶ 7-8, 453 P.3d 471, we hold that the State presented sufficient evidence to convict Defendant.

**{20}** The jury was instructed, in relevant part, that the State must prove beyond a reasonable doubt that (1) "[D]efendant touched or applied force to the unclothed buttock and the mons veneris of [Victim];" and (2) "[D]efendant's act was unlawful." *See State v. Smith*, 1986-NMCA-089, ¶ 7, 104 N.M. 729, 726 P.2d 883 ("Jury instructions become the law of the case against which the sufficiency of the evidence is to be measured.").

**{21}** As to the first element, that "[D]efendant touched or applied force to the unclothed buttock and the mons veneris of [Victim]," Defendant argues that the evidence presented at trial only showed that Defendant touched Victim on her waist, that the forensic interviewer suggested that Victim was touched inappropriately during the safe house interview and "circled the genitals" on the diagram, contrary to Victim's own testimony and that the record shows Victim's understanding of the phrase "private parts" used during her interview is not the same as the legal definition required to prove CSCM.

**{22}** As to the second element, that "[D]efendant's act was unlawful," Defendant argues that the State failed to present evidence of unlawfulness because the State's case "operated under a false presumption of criminality based on the mere fact of a touching." In contrast, Defendant presented evidence that Defendant's purpose was to tuck in Victim's shirt in conformance with the school's uniform policy. Defendant also argues that Victim's reaction of being uncomfortable is not a "legally viable theory of unlawfulness," and that "emotional upheaval" is not evidence of Defendant's intent for the contact to be unlawful.

**{23}** Reviewing the evidence presented at trial, there is sufficient evidence to find that Defendant "touched or applied force to the unclothed buttock and mons veneris of [Victim]." Victim testified that Defendant tucked her shirt inside of her underpants and, while doing so, touched areas of her body that would be covered by a bathing suit and that Defendant's skin touched her skin. Victim also drew circles over the buttocks and mons veneris on a diagram to show where Defendant touched her during her safe house interview.[2]

**{24}** Defendant's arguments on appeal asks this Court to reweigh the evidence and the credibility of the witnesses, as well as consider evidence contrary to the jury verdict to find that there was insufficient evidence to establish this element at trial. This Court declines to do so. Considering evidence and assessing the credibility of witnesses is the unique purview of the jury. *See State v. Largo*, 2012-NMSC-015, ¶ 30, 278 P.3d 532 ("[W]e resolve all disputed facts in favor of the [s]tate, indulge all reasonable inferences in support of the verdict, and disregard all evidence and inferences to the contrary." (internal quotation marks and citation omitted)); *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829 ("Contrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject [the d]efendant's version of the facts."); *see also State v. Garcia*, 2011-NMSC-003, ¶ 5, 149 N.M. 185, 246 P.3d 1057 ("New Mexico appellate courts will not invade the jury's province as a fact-finder by second-guessing the jury's decision concerning credibility." (alterations, internal quotation marks, and citation omitted)). Therefore, a reasonable juror could find that the State established that Defendant "touched or applied force to the unclothed buttock and mons veneris of [Victim]" at trial.

**{25}** Similarly, there is sufficient evidence to show "[D]efendant's act was unlawful." The jury was instructed that "[f]or the behavior to be unlawful it must have been done in a manner calculated to arouse or gratify sexual desire, or otherwise to intrude upon the bodily integrity or personal safety of the child." The detective testified that he believed that the contact was sexual after reviewing the report from the initial responding officer and that this belief was reinforced after interviewing Defendant. Although Defendant denied that the contact was sexual, the detective included in his report that Defendant admitted that the "contact was quick and immediately knew it was wrong" during his interview.

**{26}** Victim testified that the contact made "her feel uncomfortable because it was wrong," meaning "you are only supposed to tuck in your own shirt, nobody really else." The State also provided evidence of the school's "Good touch/Bad touch policy," a training for the students to help them realize when physical contact is inappropriate, including touching the area covered by a "bathing suit."

**{27}** To the extent that Defendant again asks us to reweigh evidence and credibility of witnesses to give more weight to Defendant's testimony, we will not do so. *See Largo*, 2012-NMSC-015, ¶ 30; *Rojo*, 1999-NMSC-001, ¶ 19; *see also Garcia*, 2011-NMSC-003,

---

2Contrary to Defendant's suggestion, our review of the safe house interview affirms that Victim, not the interviewer, drew the circles around the buttocks and mons veneris on the diagram.

¶ 5. Rather, the jury was free to give whatever weight it desired to Defendant's testimony, and to reject Defendant's statements that his sole intent was to tuck in Victim's shirt, not to touch Victim either in a sexual manner or in a manner that violated her bodily integrity.

**{28}** Viewing the evidence in the light most favorable to the jury verdict, this Court holds that there was sufficient evidence to convict Defendant. Although we agree with Defendant that the State cannot present CSCM as a strict liability crime and that the State's statements in closing arguments could be interpreted as such, here the State presented evidence of unclothed contact between Defendant and Victim, and that the contact was unlawful. Therefore, this Court holds that there was sufficient evidence to establish that (1) "[D]efendant touched or applied force to the unclothed buttock and the mons veneris of [Victim]"; and (2) "[D]efendant's act was unlawful." *See Ford*, 2019-NMCA-073, ¶ 7.

### III. Application of Rule 11-615(C)

**{29}** Although we are reversing and remanding on other grounds, we exercise our discretion to address Defendant's argument that the district court abused its discretion when it denied Defendant's request to allow his investigator to sit at counsel table and provide testimony under Rule 11-615. We do so to provide guidance to the district court as this question is likely to recur on remand. *See State v. Alvarez-Lopez*, 2004-NMSC-030, ¶ 37, 136 N.M. 309, 98 P.3d 699 (providing guidance on issues unnecessary to the resolution of the case but that may "arise[] again on remand").

**{30}** "The district court has broad discretion under Rule 11-615[,] and we will not disturb the decision of the trial court absent a clear abuse of this discretion and prejudice to the complaining party." *State v. Shirley*, 2007-NMCA-137, ¶ 33, 142 N.M. 765, 170 P.3d 1003 (alteration, internal quotation marks, and citation omitted). To the extent our analysis requires interpretation of Rule 11-615, our review is de novo. *See State v. Garcia*, 2013-NMCA-064, ¶ 11, 302 P.3d 111.

**{31}** A party may request the court to "order witnesses excluded so that they cannot hear other witnesses' testimony, or the court may do so on its one." Rule 11-615. However, not all witnesses are subject to exclusion, including "a person whose presence a party shows to be essential to presenting the party's claim or defense." Rule 11-615(C). Defendant argues that Rule 11-615(C) applies to witnesses for either party and that the Federal Rules of Evidence and federal case law applies the exception to defense investigators. The State's argument that Defendant failed to provide case law in support of his argument is misleading because this is an issue of first impression in New Mexico.

**{32}** We agree with Defendant that the district court abused its discretion when it precluded the defense investigator from sitting at counsel's table during trial because the court's ruling, that the exception only applied to the State, was based on an incorrect interpretation of the rule. The plain language of Rule 11-615(C), which our

Supreme Court has reaffirmed, is clear that the exception applies to all parties. *See State v. Hernandez*, 1993-NMSC-007, ¶ 36, 115 N.M. 6, 846 P.2d 312 (affirming that "the rule does not allow the trial judge to exclude a person whose presence is shown by a party to be essential to the presentation of his cause" (internal quotation marks and citation omitted)). On remand, if Defendant shows that his investigator is essential to the presentation of his defense, the investigator will not be subject to exclusion under Rule 11-615.

**CONCLUSION**

**{33}** We reverse and remand for further proceedings consistent with this opinion.

**{34} IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**JANE B. YOHALEM, Judge**