The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

Opinion Number:

Filing Date: August 26, 2024

**NO. S-1-SC-38869**

**STATE OF NEW MEXICO,**

Plaintiff-Petitioner/Cross-Respondent,

v.

**HOWARD ATENCIO,**

Defendant-Respondent/Cross-Petitioner.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Karen L Townsend, District Judge**

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

Counsel for Petitioner/Cross-Respondent

Bennett J. Baur, Chief Public Defender
Nina Lalevic, Assistant Appellate Defender
Santa Fe, NM

Counsel for Respondent/Cross-Petitioner

**CONSOLIDATED WITH**

**NO. S-1-SC-39565**

**STATE OF NEW MEXICO,**

Plaintiff-Petitioner,

v.

**ZAENAN CHIARAMONTE,**

Defendant-Respondent.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Courtney Bryn Weaks, District Judge**

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

Counsel for Petitioner

Bennett J. Baur, Chief Public Defender
Nina Lalevic, Assistant Appellate Defender
Santa Fe, NM

Counsel for Respondent

**OPINION**

**VARGAS, Justice.**

{1}    In its renowned decision, *Miranda v. Arizona*, the United States Supreme Court held in relevant part that an individual must be informed prior to questioning of the "right to the presence of an attorney." 384 U.S. 436, 479 (1966). Because Defendants in both cases before us, Defendant Atencio in *State v. Atencio*, 2021-NMCA-061, 499 P.3d 635, and Defendant Chiaramonte in *State v. Chiaramonte*, A-1-CA-40543, mem. op. (N.M. Ct. App. Aug. 22, 2022) (nonprecedential), raise the same legal issue challenging the adequacy of the *Miranda* warnings, we consolidated the appeals in our grant of certiorari. Rule 12-317(B) NMRA (consolidation); Rule 12-502 NMRA (certiorari jurisdiction). This consolidated case presents a matter of first impression addressing whether the following warnings, in relevant part, satisfy *Miranda*: Atencio was advised, "you have a right to a lawyer"; Chiaramonte was advised, "You have the right to an attorney and have him/her present while you are being questioned." Guided by United States Supreme Court precedent, we hold that

both warnings satisfy *Miranda*.[1] In so holding, we adopt *State v. Serna*, 2018-NMCA-074, 429 P.3d 1283, because it is consistent with *Miranda* and addresses many, though not all, of the issues before us. Accordingly, we reverse the Court of Appeals' holdings that Atencio and Chiaramonte were not adequately apprised of their *Miranda* rights. Finally, Defendant Atencio challenges the sufficiency of the evidence to support his convictions. For the reasons that follow, we affirm the Court of Appeals on this issue.

## I.     BACKGROUND

{2}     Because the consolidated cases present a question of law, we only briefly summarize the underlying factual circumstances relevant to resolve that question. We include additional facts as necessary in our analysis to address Defendant Atencio's sufficiency claim.

**A.     *State v. Atencio***

**1.     Facts**

{3}     The victim in *Atencio* (C.Y.) was a ten year old boy. In June of 2017, C.Y.

---

[1]Both Defendant Atencio and Defendant Chiaramonte ask this Court to consider broader protections provided by the New Mexico Constitution. In light of Defendants' concessions that the issue was not preserved, we decline to address it. *See Princeton Place v. N.M. Hum. Servs. Dep't*, 2022-NMSC-005, ¶ 23, 503 P.3d 319 (explaining that our consideration of unpreserved issues is discretionary).

moved with his mother (Mother) and three siblings into a trailer in Kirtland, New Mexico. Atencio lived in the trailer next door to C.Y. Upon learning that Mother's former neighbor may have sexually abused C.Y., Father reported the alleged abuse to law enforcement. Eventually, the case was assigned to Detective Babadi of the San Juan County Sheriff's Office, who identified Atencio as a suspect. In 2018, Detective Babadi asked Atencio to come to the sheriff's office to discuss an unrelated incident reported by Atencio. After Detective Babadi and Atencio discussed that incident, Detective Babadi told Atencio that he wanted to discuss the present case.

{4}     Prior to questioning, Detective Babadi read Atencio the following *Miranda* rights from a form: "You have the right to remain silent; anything you say may be used against you; you have a right to a lawyer; and if you cannot afford a lawyer one will be provided free." After reading Atencio his rights, Detective Babadi placed the same form in front of Atencio on the table, asking him if he understood. Atencio confirmed he understood. Detective Babadi proceeded to ask Atencio if he could read out loud and confirmed that he could read and write. Detective Babadi told Atencio he was not confirming this information to insult his intelligence, but to ensure that Atencio knew his rights. In response, Atencio pulled the paper toward himself and read out loud: "I understand these rights as given above. I waive them

3

and agree to answer questions put to me by the police." Detective Babadi asked Atencio if he understood what he just read; Atencio confirmed and signed the advisement form.

{5} During the interview, Atencio admitted—among other things—that he saw C.Y. every day during the four or five months that they lived next door to each other in Kirtland and that he had touched C.Y.'s penis between twenty and thirty times.

**2. Procedural history**

{6} Defendant Atencio was charged as relevant here with one count of criminal sexual penetration of a minor (CSPM), contrary to NMSA 1978, Section 30-9-11(D)(1) (2009), and twenty-five counts of criminal sexual contact of a minor in the second degree (CSCM), contrary to NMSA 1978, Section 30-9-13(B)(1) (2003).

{7} Prior to trial, the State filed a motion to admit Detective Babadi's interview of Atencio, asserting that Atencio was "properly Mirandized and his statements were knowingly, intelligently, and voluntarily made." Defendant Atencio did not respond and, after a hearing on the motion, "the district court ruled that it '[saw] no problems at all with this *Miranda* waiver and any statements [were] going to be allowed [at trial].'" *Atencio*, 2021-NMCA-061, ¶ 11. Detective Babadi's interview of Atencio was admitted at trial, and he was subsequently convicted of one count of CSPM and twenty-one counts of CSCM. Defendant Atencio appealed to the Court of Appeals,

4

asserting: (1) the warnings he received were inadequate, (2) assistance of counsel was ineffective[2] if the Court of Appeals determined that his challenge of the adequacy of the *Miranda* warnings was not preserved, and (3) the evidence was insufficient.

{8}     The Court of Appeals first focused on Defendant Atencio's objection at the evidentiary hearing, concluding that the issue of the adequacy of the warnings was not preserved because his objection below was "focused squarely on whether his *Miranda* waiver was knowing, intelligent, and voluntary—not whether his *Miranda* warnings were in fact adequate." *Id.* ¶¶ 14, 16. As a result, the Court examined the adequacy of the warnings under the fundamental error standard. *Id.* ¶ 34. Ultimately, the Court of Appeals held that the warnings given to Atencio were defective "because they did not clearly convey to Atencio that he had a right to presence of counsel prior to, and during, his interview." *Id.* ¶ 30. The Court of Appeals explained that its holding "does not impose a requirement that *Miranda* warnings must include specific language that an individual subject to custodial interrogation has the right

[2]The *Atencio* Court of Appeals did not address Defendant Atencio's ineffective assistance of counsel claim "in light of [its] holding regarding the admission of [Atencio]'s statements," *Atencio*, 2021-NMCA-061, ¶ 3, and Defendant Atencio does not challenge that determination or otherwise raise the issue before this Court.

5

to counsel before and during questioning." *Id.* ¶ 35. Rather, it "simply confirm[s] that an individual subject to custodial interrogation must be informed that he has a constitutional right, among others, to the 'presence of an attorney, either retained or appointed' before and during questioning." *Id.* The Court of Appeals' explanation of its holding is unclear because it sows confusion as to what precisely is required of law enforcement moving forward. This confusion is highlighted by Defendant Atencio's view that the Court "held for the first time that police *must explicitly* warn suspects of their right to have counsel present *prior to and during questioning*" (emphasis added), which is at odds with the Court's own language explaining that it did "not impose" such a requirement, thus warranting our review.

{9} Finally, the Court of Appeals examined the sufficiency of the evidence. It held that sufficient evidence supported each of Defendant Atencio's convictions, *Atencio*, 2021-NMCA-061, ¶¶ 37, 49-51, relying upon this Court's recent analysis in *State v. Lente*, 2019-NMSC-020, 453 P.3d 416.

{10} The State appealed to this Court, contending the Court of Appeals erred in concluding that the *Miranda* warning given to Atencio was inadequate. Defendant Atencio filed a cross-appeal challenging the sufficiency of the evidence. We granted certiorari.

**B.    *State v. Chiaramonte***

6

## 1. Facts

{11} Victim (ADLP) was an eleven year old girl who was sexually abused by Chiaramonte when Chiaramonte was nearly twenty years old. Eventually, the abuse was reported, and a detective interviewed Chiaramonte. Prior to conducting the interview, the detective read Chiaramonte the following *Miranda* rights:

> You have the right to remain silent. Anything you say can and will be used against you in a court of law. You have the right to an attorney and have him[/her] present . . . while you are being questioned. If you cannot afford . . . an attorney, one will be appointed to you by the state of New Mexico free of charge.

{12} Chiaramonte initialed and signed an advisement containing functionally the same, above-quoted language.[3] The "Advisement of Rights" form stated, "Before we ask you any questions, you must understand your constitutional rights." **[*Id.*]** Directly below that statement followed a series of rights with a space for Chiaramonte to initial each. The first four lines informed Chiaramonte of his

---

[3]Although Defendant Chiaramonte refers to the oral and written advisements interchangeably, and the State, district court, and Court of Appeals indicate that they are the same, we note there are a couple differences that do not impact the meaning of the warnings, including pronoun usage "him" versus "him/her" and what appear to be two occurrences of inadvertently duplicative text. *See Serna*, 2018-NMCA-074, ¶ 15 ("If a defendant has been told the substance of his constitutional rights, it is not fatal if irrelevant words or words with no independent substance are omitted." (internal quotation marks and citation omitted)). For consistency, we refer to the language contained in the written warning throughout the remainder of this opinion.

*Miranda* rights as outlined in the above-quoted language. **[*Id.*]** Additional lines provided further explanation to Chiaramonte ensuring that he understood that "[a]t any time you can exercise your rights and stop answering questions," that "I have been advised of and understand my Constitutional Rights," and that "I have read and understand my Constitutional Rights."

{13} Chiaramonte initialed in the space next to each of these lines, signing and dating directly below. The form contained two additional paragraphs labeled "Waiver of Rights," beneath which he again signed his name and entered the date. The first paragraph stated, "I have read this statement of my rights and understand what my Constitutional Rights are." The second paragraph provided, "I am willing to make a statement and answer questions. I understand and know what I am doing. No promises or threats have been made against me and no pressure or coercion of any kind has been used against me." In total, Chiaramonte initialed nine times, indicating he understood his rights and was willing to waive those rights while speaking to the detective.

{14} During the interview, Chiaramonte admitted that he sexually abused ADLP.

**2.    Procedural history**

{15} Defendant Chiaramonte was charged in relevant part with six counts of CSPM. Defendant Chiaramonte filed a motion to suppress, asserting that the

8

*Miranda* warnings were inadequate because they did not convey that he had the right to the presence of counsel *prior* to questioning. The district court granted Defendant Chiaramonte's motion to suppress, explaining that the *Miranda* warnings were insufficient under *Miranda*, 384 U.S. 436, and *Serna*, 2018-NMCA-074. The district court reasoned that the warnings "did not reasonabl[y] convey, explicitly or implicitly, Mr. Chiaramonte's right to counsel . . . [or] right to consult with counsel prior to question[ing]." The State filed a motion for reconsideration, which the district court denied. The State appealed to the Court of Appeals, arguing that the district court erred in granting Defendant Chiaramonte's motion to suppress.

{16} The Court of Appeals applied *Serna*, holding that the warning given to Chiaramonte was inadequate because it "did not convey that [Chiaramonte] had the right to counsel *before* being questioned." *Chiaramonte*, No. A-1-CA-40543, ¶ 8. It reasoned that the warning ("'You have the right to an attorney and have him[/her] present with you while you are being questioned.'") did not convey Chiaramonte's right to counsel before being questioned because "[t]he word 'while' modified the entire phrase, 'You have the right to an attorney and have him present with you.'" *Id.* This modification, the Court of Appeals explained, improperly "restrict[ed] that right to *during* the time [Chiaramonte was] being questioned by officers." *Id.* (emphasis added).

9

{17}     The State appealed, presenting one question for this Court's consideration: whether the Court of Appeals erred in its conclusion that the *Miranda* warning given to Chiaramonte "was inadequate because it did not specify that he had the right to a lawyer before questioning."

## II.     DISCUSSION

### A.     *Miranda* Warnings

{18}     The State raises the same contention in both appeals: that the *Miranda* warnings were adequate. We review de novo this legal question, whether Atencio[4] and Chiaramonte were adequately advised of their rights under *Miranda*. *See State v. Gutierrez*, 2011-NMSC-024, ¶ 7, 150 N.M. 232, 258 P.3d 1024 ("The ultimate

---

[4]While we agree that Defendant Atencio failed to preserve the issue, our jurisprudence suggests that plain error is the appropriate standard of review rather than fundamental error as applied by the Court of Appeals because the Court of Appeals and Defendant Atencio frame the error as an improper admission of evidence by the district court. *See State v. Montoya*, 2015-NMSC-010, ¶ 46, 345 P.3d 1056 (explaining when evidentiary questions, such as the admission of testimony, may be reviewed for plain error). This distinction does not impact our analysis because we ultimately conclude the *Atencio* district court did not err, let alone commit plain or fundamental error; therefore, our analysis does not proceed beyond the first step, which is the same under either standard of review. *See State v. Silva*, 2008-NMSC-051, ¶ 11, 144 N.M. 815, 192 P.3d 1192 (explaining that the "first step in reviewing for fundamental error is to determine whether an error occurred"), *holding modified on other grounds by State v. Guerra*, 2012-NMSC-027, ¶ 11, 284 P.3d 1076; *see also* Michael H. Graham, *Winning Evidence Arguments* § 103:9 Rule 103(e): plain error, December 2023, at 11 ("The first step in a plain error analysis is to determine whether error occurred.").

determination of whether a valid waiver of *Miranda* rights has occurred, however, is a question of law which we review de novo." (text only)[5] (citation omitted)); *see also State v. Verdugo*, 2007-NMCA-095, ¶ 12, 142 N.M. 267, 164 P.3d 966 (noting that the adequacy of *Miranda* warnings is a question of law subject to de novo review).

**1.      Federal *Miranda* precedent**

{19}     In pertinent part, *Miranda* requires a person "subjected to questioning" to be advised simply "that he has the right to the presence of an attorney." 384 U.S. at 478-79. Defendants in this case do not dispute *Miranda*'s holding. To be sure, *Miranda* clarified that *the presence of an attorney* includes the right to consult with an attorney before and during questioning. 384 U.S. at 470 ("[T]he need for counsel to protect the Fifth Amendment privilege comprehends not merely a right to consult with counsel prior to questioning, but also to have counsel present during any questioning if the [suspect] so desires."). But *Miranda* makes clear there is no requirement that a suspect receive a warning exactly to that effect. Instead, by way of example, *Miranda* explained that the relevant portion of the warning given by the

---

[5]The "(text only)" parenthetical indicates the omission of nonessential punctuation—including internal quotation marks, ellipses, and brackets—that are present in the text of the quoted source, leaving the quoted text otherwise unchanged.

11

FBI at that time—"'that the person has . . . a right to counsel'"—was "consistent with the procedure . . . delineate[d]" by the United States Supreme Court in *Miranda*. *Id.* at 484 (citation omitted). Notably, those warnings do not expressly advise the accused that counsel may be present during, or even before, interrogation. In other words, under *Miranda*, the right to have counsel present prior to as well as during questioning is adequately conveyed simply by informing a suspect of the right to counsel. *Accord* 384 U.S. at 500 n.3 (Clark, J., dissenting) ("The [FBI's] offer of counsel is articulated only as 'a right to counsel'; nothing is said about a right to have counsel present at the custodial interrogation."); *see also United States v. Clayton*, 937 F.3d 630, 639 (6th Cir. 2019) ("*Miranda*, it bears reminding, merely required that a [suspect] be informed of his right to 'the presence of an attorney.' . . . But *Miranda* did not require a warning exactly to that effect. . . . And those warnings, while advising of the right to counsel, conspicuously did not state expressly that counsel may be present during interrogation." (citation omitted)).

{20}     After *Miranda* was decided in 1966, the United States Supreme Court delivered three opinions addressing the adequacy of *Miranda* warnings, never departing from that simple, generic warning. The first case in which it revisited *Miranda* in this context is *California v. Prysock*, 453 U.S. 355 (1981), where at a police interrogation the suspect was advised, "'You have the right to talk to a lawyer

before you are questioned, have him present with you while you are being questioned, and all during the questioning.'" *Id.* at 356. The United States Supreme Court held that the warnings "fully conveyed [the suspect's] rights" under *Miranda*. *Id.* at 361. It explained that—in contrast with other cases where the right to counsel was linked to a time in the future—"nothing in the warnings . . . suggested any limitation on the right to the presence of appointed counsel different from the clearly conveyed rights to a lawyer in general." *Id.* at 360-61.

{21} In *Duckworth v. Eagan*, 492 U.S. 195 (1989), officers informed the suspect, in relevant part, as follows: "'You have a right to talk to a lawyer for advice before we ask you any questions, and to have him with you during questioning.'" *Id.* at 198 (emphasis omitted). Officers also advised the suspect as follows: "'We have no way of giving you a lawyer, but one will be appointed for you, if you wish, if and when you go to court.'" *Id.* (emphasis omitted). The Seventh Circuit in *Duckworth* determined that the "'if and when you go to court'" portion of the warning rendered the entire warning defective because it denied the indigent suspect "'a clear and unequivocal warning of the right to appointed counsel before any interrogation'" and linked that right "'with a future event.'" *Id.* at 198 (citation omitted). The United States Supreme Court reversed, holding that the warnings, "in their totality," were sufficient under *Miranda*. *Id.* at 205. It reasoned that the advice "'if and when you

13

go to court'" simply anticipated the question about "when [the suspect] will obtain counsel" that is commonly asked after a suspect receives *Miranda* warnings. *Id.* at 204.

{22}     Most recently and of particular relevance to the consolidated case before us, in *Florida v. Powell*, 559 U.S. 50 (2010), officers read a form to an arrested suspect advising in relevant part of the "'right to talk to a lawyer before answering any of our questions.'" *Id.* at 54. The advisement also included what the *Powell* Court referred to as a "catchall warning," which stated, "'[Y]ou have the right to use any of these rights at any time you want during this interview.'" *Id.* at 55. Once again, the United States Supreme Court held that the warnings satisfied *Miranda* because the officers "did not 'entirely omit' any information *Miranda* required them to impart." *Powell*, 559 U.S. at 62 (brackets and citation omitted). The *Powell* Court explained, "The first statement communicated that [the suspect] could consult with a lawyer before answering any particular question, and the second statement confirmed that he could exercise that right while the interrogation was underway." *Id.* Read together, "the two warnings reasonably conveyed [the suspect's] right to have an attorney present, not only at the outset of interrogation, but at all times." *Id.*

{23}     In reaching its holding, the *Powell* Court first articulated the question that had been certified to the Florida Supreme Court: "'Does the *failure to provide express*

14

*advice* of the right to the presence of counsel during questioning'" render the *Miranda* warnings inadequate? *Id.* at 55 (emphasis added) (citation omitted). The United States Supreme Court was not persuaded by the Florida Supreme Court's conclusion that the warning was misleading because "the temporal language—that [the suspect] could 'talk to a lawyer before answering any of [the officers'] questions'—suggested [the suspect] could consult with an attorney only before the interrogation started." *Id.* at 63 (second alteration in original). Instead, the *Powell* Court explained, "In context, . . . the term 'before' merely conveyed when [the suspect's] right to an attorney became effective—namely, before he answered any questions at all. Nothing in the words used indicated that counsel's presence would be restricted after the questioning commenced." *Id.* Therefore, even though the warning given to the suspect in *Powell* did not *expressly* inform the suspect of the right to the *presence* of counsel at all, let alone during questioning, the *Powell* Court held that the warning was sufficient, reasoning as follows:

> To reach the opposite conclusion, i.e., that the attorney would not be present throughout the interrogation, the suspect would have to imagine an unlikely scenario: To consult counsel, he would be obliged to exit and reenter the interrogation room between each query. A reasonable suspect in a custodial setting who has just been read his rights, we believe, would not come to the counterintuitive conclusion that he is obligated, or allowed, to hop in and out of the holding area to seek his attorney's advice.

*Id.* at 62.

{24} Further, the *Powell* Court compared the warnings given to the suspect in that case with the warnings used by federal law enforcement agencies in general, and more specifically, the FBI. *Id.* at 64. It explained that the warnings given by federal agencies "explicitly advise suspects of the full contours of each *Miranda* right, including the right to the presence of counsel during questioning." *Id.* (text only) (citation omitted). As to the warnings used by the FBI, the *Powell* Court labeled them "exemplary." *Id.* Those warnings state in pertinent part, "'You have the right to talk to a lawyer for advice before we ask you any questions. You have the right to have a lawyer with you during questioning.'" *Id.* The *Powell* Court reasoned that, while such advice is "admirably informative," it is not "necessary to meet *Miranda*'s requirements. Different words were used in the advice [the suspect] received, but they communicated the same essential message." *Id.*

{25} In other words, the warnings given by federal agencies and the FBI at the time of the Court's decision in *Powell*, which explicitly advised suspects of the right to the presence of counsel during interrogation, conveyed the same essential message as the warning given to the suspect in *Powell*, which did *not* explicitly advise him of the right to the presence of counsel during interrogation. The United States Supreme Court's rationale in *Powell* reaffirms what that Court has repeatedly conveyed regarding the required *Miranda* warnings: "In determining whether police warnings

16

were satisfactory, reviewing courts are not required to 'examine [them] as if construing a will or defining the terms of an easement. The inquiry is simply whether the warnings reasonably conve[y] to [a suspect] his rights as required by *Miranda*." *Id.* at 51 (alterations in original) (quoting *Duckworth*, 492 U.S. at 203 (internal quotation marks omitted)).

**2.      *State v. Serna***

{26}     Because the State, Defendants, and the Court of Appeals in both cases heavily rely upon *Serna*, 2018-NMCA-074, we discuss it in some detail before concluding that *Serna* is consistent with *Miranda*, thereby adopting it to apply to the consolidated case before us today.

{27}     In *Serna*, officers advised the suspect that he had, in relevant part, "'the right to an attorney during any and all questionings.'" *Id.* ¶ 3. The *Serna* Court of Appeals addressed whether "*Miranda* require[s] that a person subject to custodial interrogation be warned of that person's right to have counsel present prior to questioning." *Id.* ¶ 17. The *Serna* Court then answered this question in the affirmative: "It is clear from both *Miranda* and subsequent decisions by the United States Supreme Court that there is a right to have and consult with counsel prior to questioning." *Id.* ¶ 18. Consistent with *Miranda*, however, this right does not need to be explicitly conveyed to the suspect. *Id.* ¶ 21 ("We conclude that *Miranda*

requires that a person be warned, at least implicitly, that they have a right to counsel prior to questioning."). Instead, the *Serna* Court explained that "one can reasonably infer from an advisement referring to the right to the presence of counsel that the right applies both before and during interrogation." *Id.* ¶ 19.

{28}     The State in *Serna* argued that it and the Supreme Court of New Mexico, as well as the United States Supreme Court, "have all upheld on numerous occasions warnings that simply apprised the suspect of a right to the presence of counsel, which is a verbatim recitation of what *Miranda* noted was required." *Id.* ¶ 19. The Court of Appeals responded that such a warning, though not directly at issue in *Serna*, is likely sufficient because it "contains no limitation on the right to counsel." *Id.* It explained, "The fact that courts have affirmed the use of the term 'presence of counsel' does not mean that a suspect need not be advised of his right to counsel prior to questioning . . . but rather that such language adequately conveys that right." *Id.* The *Serna* Court proceeded to address the warning given in that case, "'the right to an attorney during any and all questionings,'" *id.* ¶ 3, concluding that it was inadequate because it "placed a misleading temporal limitation on the full right to counsel under *Miranda*," *id.* ¶ 25. In reaching its conclusion, the *Serna* Court "simply reaffirm[ed] the traditional *Miranda* requirement that a suspect be apprised of the full right to counsel without limitation." *Id.*

{29} Thus, *Serna* is consistent with *Miranda* and its progeny because, unlike *Prysock*, *Duckworth*, and *Powell*, where the suspect's advisement included—either explicitly or implicitly—his right to a lawyer before questioning, the warning given to the suspect in *Serna* only informed the suspect of "'the right to an attorney *during* any and all questionings.'" *Id.* ¶ 3 (emphasis added). This warning was defective because it failed to convey—explicitly or implicitly—that the suspect had the right to an attorney before questioning. *Id.* ¶ 24. Therefore, unlike *Powell*, the officers in *Serna* "entirely omit[ted] . . . information *Miranda* required them to impart." *Powell*, 559 U.S. at 62.

{30} Because the reasoning in *Serna* is sound, consistent with United States Supreme Court precedent, and none of the parties before the Court argue that *Serna* is incorrect, we adopt *Serna*.

**3.     Atencio received adequate *Miranda* warnings**

{31} Atencio was advised that he had the "'right to a lawyer.'" We first examine this warning in the context of United States Supreme Court precedent prior to assessing the warning under *Serna*. Even though Defendant Atencio acknowledges *Miranda* only requires that the accused be advised of the "'right to the presence of an attorney'" (quoting *Miranda*, 384 U.S. at 479), he contends that the warning he received was too general, thereby failing to explicitly inform him of his right to speak

19

to an attorney before questioning as well as the right to have such attorney present during questioning. Defendant Atencio first outlines *Prysock* and *Duckworth*, concluding that the United States Supreme Court in both cases "affirmed that the right to an attorney before and during questioning is *required* information *in the advisement*" (emphasis added).

{32} However, federal precedent does not support Defendant Atencio's position that such precise language must be included in the advisement. In *Prysock*, the United States Supreme Court explained that "*Miranda* itself indicated that no talismanic incantation was required to satisfy its strictures." *Prysock*, 453 U.S. at 359. To support its explanation that *Miranda* does not support a rigid or "precise formulation" in "the *form* of the required warnings," *id.*, the *Prysock* Court relied upon *United States. v. Lamia*, 429 F.2d 373, 375-76 (2d Cir. 1970). In *Lamia*, the suspect was advised simply of the "'right to an attorney.'" 429 F.2d at 376. The *Lamia* Court held that the warning was sufficient because the suspect was informed "without qualification that he had the right to an attorney." *Id.* at 377. Notably, the warning Atencio received ("a right to a lawyer") was nearly identical to the warning given to the suspect in *Lamia*, 429 F.2d at 376 ("'the right to an attorney'"), and the FBI warning endorsed in *Miranda*, 384 U.S. at 484 ("'a right to counsel'").

{33} Defendant Atencio next refers this Court to *Powell*, concluding that no United

States Supreme Court precedent has "found that a warning devoid of the right to the presence of counsel was sufficient" and that each case before the United States Supreme Court "mentioned the requirement that the suspect be informed of the right to the presence of counsel." In Defendant Atencio's view, this supports his argument that the warning he received, "a right to a lawyer," was inadequate because it did not include the word "presence." The plain language of *Powell* does not support Defendant Atencio's position. As we explained in detail previously herein, the warning given to the suspect in *Powell* did not *expressly* inform the suspect of the right to the *presence* of counsel at all, let alone during questioning, and yet the *Powell* Court held that the warning was sufficient because "[a] reasonable suspect in a custodial setting who has just been read his rights" would have understood his right to the presence of an attorney throughout the interrogation. 559 U.S. at 62; *see Clayton*, 937 F.3d at 639-40 (relying upon *Powell* in concluding that the warning given in that case was sufficient even though it did not "expressly" inform the suspect of the right to counsel during questioning because "[i]t would be 'counterintuitive' to think that both rights kicked in before questioning but terminated the moment the officer started the interrogation"); *see also Carter v. People*, 2017 CO 59M, ¶ 14, 398 P.3d 124, *as modified on denial of reh'g* (July 31, 2017) (concluding that the warning "'You have the right to have an attorney'" was

sufficient because "the specific advisement of the [suspect]'s right to counsel . . . did not include any temporal limitation that might even colorably be misunderstood to restrict the exercise of that right relative to interrogation by the police").

{34} Similar to Defendant Atencio's view, Justice Stevens, in his dissent, deemed the warning given in *Powell* to be insufficient and asserted that *Miranda* required a suspect to be informed of the "separate and distinct right 'to have counsel present during any questioning.'" *Powell*, 559 U.S. at 75-76 (Stevens, J., dissenting) (quoting *Miranda*, 384 U.S. at 470). The majority disagreed, responding, "We find the warning in this case adequate, however, only because it communicated just what *Miranda* prescribed." *Id.* 559 U.S. at 62 n.5. Thus, the *Powell* Court approved of the *Miranda* warning even though the warning did not explicitly advise the suspect in that case of the right to the *presence* of an attorney. *Powell*, 559 U.S. at 62.

{35} Like the majority in *Powell*, we hold that the warning given to Atencio was sufficient because it conveyed what *Miranda* required. The warning did not "'entirely omit' any information *Miranda* required," consistent with *Powell*, 559 U.S. at 62 (brackets and citation omitted). Nor did it improperly suggest any temporal limitation by linking Atencio's right to counsel "to a future point in time after police interrogation," consistent with *Prysock*, 453 U.S. at 360. And even if this Court were inclined to agree with Defendants, we are bound by federal

22

precedent. *See Fare v. Michael C.*, 442 U.S. 707, 717 (1979) ("[I]t is clear that 'a State may not impose . . . greater restrictions as a matter of *federal constitutional law* when [the United States Supreme] Court specifically refrains from imposing them.'" (omission in original) (citation omitted)).

{36}   Pursuing a different line of argument, Defendant Atencio contends that the warnings he received were inadequate when placed in the context of the events surrounding his questioning. *See State v. Salazar*, 1997-NMSC-044, ¶ 61, 123 N.M. 778, 945 P.2d 996 (explaining that it is proper to consider "events surrounding the questioning" in determining whether the warnings were adequate under *Miranda*). In Defendant Atencio's view, Detective Babadi demanded that he answer his questions, instead of asking, and the warnings, in addition to the demand, "could have easily led to Atencio not understanding that he could consult with counsel before the questioning began." Prior to questioning, Detective Babadi said, "I want to hear your side of the story . . . you need to answer me some questions, OK?" Atencio responded, "OK." The detective proceeded to read Atencio his rights, including, as relevant here, his "right to a lawyer." After reading Atencio his rights, Detective Babadi placed the same form in front of Atencio on the table, asking him if he understood. Atencio confirmed he understood. Detective Babadi proceeded to ask Atencio if he could read out loud and confirmed that he could read and write.

Detective Babadi explained he was not confirming such information to insult Atencio's intelligence but to ensure he knew his rights. Then, Atencio read out loud: "I understand these rights as given above. I waive them and agree to answer questions put to me by the police." Detective Babadi proceeded to ask Atencio if he understood what he just read; Atencio confirmed and signed the advisement form.

{37} Examining the warnings in the context of these surrounding events, we are unpersuaded that Detective Babadi engaged in any conduct that would reasonably lead Atencio to believe that he could not consult with a lawyer before questioning—and Defendant Atencio does not refer us to any precedent suggesting otherwise, so we assume none exists. *See State v. Guerra*, 2012-NMSC-014, ¶ 21, 278 P.3d 1031 (providing that where no authority is cited we may assume none exists). Instead, it is clear Detective Babadi took care to ensure that Atencio understood his rights. Atencio himself read out loud and subsequently signed that he understood and agreed to waive his rights, one of them being his right to a lawyer, prior to answering any questions from the detective.

{38} We now consider Defendant Atencio's argument under *Serna*. As previously discussed, the *Atencio* Court of Appeals first focused on the portion of *Serna* explaining that *Miranda* warnings include the right to consult with a lawyer prior to interrogation. *Atencio*, 2021-NMCA-061, ¶¶ 31-32. The *Atencio* Court proceeded to

rely upon *Serna* to conclude that, like *Serna*, the warning given to Atencio was inadequate because "'the balance of the warnings contain[ed] no before questioning language—*or any other language, for that matter*—by which we could infer that the full right to counsel was adequately conveyed.'" *Id.* ¶ 34 (quoting *Serna*, 2018-NMCA-074, ¶ 24 (emphasis added)).

{39} The Court of Appeals misapplied *Serna* in Defendant Atencio's case by failing to recognize that the fundamental issue with the *Miranda* warning in *Serna* was the inclusion of misleading temporal language, "'You have the right to an attorney *during* any and all questionings.'" *Serna*, 2018-NMCA-074, ¶ 3 (emphasis added). *Serna* was careful to highlight that the temporal language was "pivotal," explaining that the word "'during' modifies the phrase 'you have a right to an attorney' and restricts that right to the duration of any questioning by law enforcement." *Id.* ¶ 23. *Serna* concluded, "[B]y implying that the right to counsel would be effective only during the interrogation, the warnings given by [the officer to the suspect] placed a misleading temporal limitation on the full right to counsel under *Miranda*." *Id.* ¶ 25.

{40} Nothing in *Serna*, however, suggests that the inadequacy of the *Miranda* warning in that case stemmed from anything other than the insertion of misleading temporal language implying that the suspect did not have the right to counsel prior

to interrogation. Rather, the *Serna* Court explained that a general *Miranda* warning implies a right to counsel prior to questioning. *Id.* ¶¶ 21-22. "That is, one can *reasonably infer* from an advisement referring to the right to the presence of counsel that the right applies both before and during interrogation." *Id.* ¶ 19 (emphasis added). Stated in slightly different terms, a *Miranda* warning without any improper temporal limitation (like the one given to Atencio, for example) "adequately conveys" that a suspect has the right "to the presence of counsel . . . before and during interrogation." *Id.*; *accord Prysock*, 453 U.S. at 360-61 (stating that "nothing in the warnings given [to the suspect] suggested any limitation on the right to the presence of appointed counsel different from *the clearly conveyed rights to a lawyer in general*." (emphasis added)).

{41} In sum, the *Miranda* warning given to Atencio informed him of his "right to a lawyer." Under *Serna*, the warning given to Atencio was adequate because "one can reasonably infer" from an advisement referring to "the right to a lawyer" the same as "one can reasonably infer from an advisement referring to *the right to the presence of counsel* that the right applies both before and during interrogation." *Serna*, 2018-NMCA-074, ¶ 19 (emphasis added). Therefore, the advisement of the right to an attorney, like the advisement of "the right to remain silent"—which Defendant Atencio does not argue is misleading or that it was inadequate even

26

though it did not explicitly inform him of his right to remain silent before as well as during questioning—confirms that Atencio received adequate warnings under *Miranda*. *See, e.g.*, *Carter*, 2017 CO 59M, ¶ 14 (relying upon the general nature of the warning, "'the right to remain silent,'" to support that the warning the suspect received in that case, "'You have the right to have an attorney,'" satisfied *Miranda*).

### 4. Chiaramonte received adequate *Miranda* warnings

{42}     Chiaramonte was advised that he had "the right to an attorney and have him/her present while you are being questioned." Defendant Chiaramonte contends that this warning was inadequate because it placed an improper temporal limitation on his right to counsel, suggesting that the right did not apply before questioning. As with Defendant Atencio's case, we first examine the warning given to Chiaramonte in the context of United States Supreme Court precedent prior to assessing the warning under *Serna*.

{43}     We begin our discussion by highlighting that the warning given to Chiaramonte is strikingly similar to the warning *Miranda* approved of, informing a suspect of "the right to consult with a lawyer and to have the lawyer with him during interrogation." *Miranda*, 384 U.S. at 471. And as previously discussed, the actual form that the warning can take is flexible; the *Miranda* Court also approved of warnings advising a suspect of "the right to the presence of an attorney," *id.* at 479,

and, in the case of the FBI warnings at that time, of "'a right to counsel,'" *id.* at 484. Since *Miranda*, the United States Supreme Court has taken every opportunity to reaffirm its flexible approach to evaluating the form of a *Miranda* warning. *See, e.g.*, *Prysock*, 453 U.S. at 359 ("*Miranda* itself indicated that no talismanic incantation was required."); *Duckworth* 492 U.S. at 203 ("*Miranda* warnings are not themselves rights protected by the Constitution but are instead measures to insure that the right against compulsory self-incrimination is protected. Reviewing courts therefore need not examine *Miranda* warnings as if construing a will or defining the terms of an easement." (text only) (citation omitted)); *Powell*, 559 U.S. at 60 ("The four warnings *Miranda* requires are invariable, but this Court has not dictated the words in which the essential information must be conveyed.").

{44}    Contrary to this flexible approach, Defendant Chiaramonte raises the same argument Defendant Atencio raised, relying upon *Prysock* and *Duckworth* to establish that, in his view, both cases "affirmed that the right to an attorney before and during questioning *must be* included in the advisement" (emphasis added). We disagree. As previously discussed in detail, *Prysock* explained that *Miranda* neither requires talismanic language nor does it support a rigid or "precise formulation" in "the *form* of the required warnings." *Prysock*, 453 U.S. at 359. And *Prysock*, *id.*, in its reliance on *Lamia* where the warning given simply advised the suspect of "the

28

right to an attorney," *Lamia*, 429 F.2d at 375-77, is incompatible with Defendant Chiaramonte's assertion that the warning *must* expressly state that a person has the right to an attorney before and during questioning.

{45} Contrary to Defendant Chiaramonte's formulaic assertions, the United States Supreme Court in *Duckworth* once again disapproved of a rigid approach to the form of the warning. *See* 492 U.S. at 203 ("The inquiry is simply whether the warnings reasonably convey to a suspect his rights as required by *Miranda*." (brackets and internal quotation marks omitted) (quoting *Prysock*, 453 U.S. at 361)). Adhering to the appropriate inquiry established in *Duckworth*, the warning given to Chiaramonte that he had "the right to an attorney *and* have him/her present while [he was] being questioned" (emphasis added) reasonably conveyed his rights under *Miranda*. The first clause, "You have the right to an attorney," provided the general right, and the second clause, advising Chiaramonte that his attorney could be "present while [he was] being questioned," simply confirmed that his attorney could be present during questioning.

{46} Defendant Chiaramonte next relies upon *Powell*, contending that *Powell*, *Duckworth*, and *Prysock* all "affirmed the requirement that the suspect be informed of the right to the presence of counsel." We agree that the portion of *Powell* Defendant Chiaramonte refers us to, 559 U.S. at 59, reiterates that *Miranda*'s third

warning includes "'the right to the presence of an attorney.'" Defendant Chiaramonte is incorrect, however, in his contention that *Powell* requires that a "suspect be informed of the right to the presence of counsel" because, once more, the suspect in *Powell* was never expressly informed of the right to the "presence" of counsel. Instead, the suspect in *Powell* was only informed of the "'right to talk to a lawyer before answering any of our questions,'" *id*. at 54, and that "'[y]ou have the right to use any of these rights at any time you want during this interview.'" *Id.* at 55 (alteration in original). Despite the absence of any reference in the warning to the *presence* of counsel, the *Powell* Court held that the warning was sufficient based upon what it reasonably conveyed to the suspect. *Id.* at 62.

{47}     We therefore fail to see how the warning given to Chiaramonte—which informed him, "Before we ask you any questions, . . . [y]ou have the right to an attorney and have him/her present while you are being questioned," and which included the catchall warning, "[a]t any time you can exercise your rights and stop answering questions"—could be insufficient when the sufficient warning given in *Powell* only informed the suspect of the "'right to talk to a lawyer before answering any of our questions,'" *id*. at 54, and included a catchall warning that "'[y]ou have the right to use any of these rights at any time you want during this interview.'" *Id.* at 55. Contrary to Defendant Chiaramonte's position, the *Powell* Court explained,

"The first statement communicated that [the suspect] could consult with a lawyer before answering any particular question, and the second statement confirmed that he could exercise that right while the interrogation was underway." *Id.* at 62. When read "[i]n combination, the two warnings reasonably conveyed [the suspect's] right to have an attorney present, not only at the outset of interrogation, but at all times." *Id.* We reach the same conclusion here. The first clause of the warning contained no temporal limitation, communicating that Chiaramonte had "the right to an attorney," and the second clause, "have him/her present while you are being questioned," in the words of *Powell*, "confirmed that he could exercise that right while the interrogation was underway." *Id.* at 62. When read together, as *Powell* dictates, the warning reasonably conveyed his right to the presence of an attorney "at all times." *Id.* To conclude that the warning given to Chiaramonte did not convey the right to the presence of counsel would result in the same "counterintuitive conclusion" rejected in *Powell* itself. *Id.* at 62-63 (rejecting the conclusion that the warning failed to communicate the right to the presence of an attorney even though it was not explicitly stated because a "reasonable suspect in a custodial setting who has just been read his rights, we believe, would not come to the counterintuitive conclusion that he is obligated, or allowed, to hop in and out of the holding area to seek his attorney's advice").

{48} The State holds out *State v. Nave*, 821 N.W.2d 723, 737 (Neb. 2012), and *People v. Snaer*, 758 F.2d 1341, 1343 (9th Cir. 1985), as two cases where the court approved of warnings similar to those given to Chiaramonte, arguing that these cases support the conclusion that the warning given to Chiaramonte was adequate, as well. We agree with the State that an examination of the warnings given to the suspects in *Nave* and *Snaer* is informative in light of the similarity between those warnings and the warning given to Chiaramonte, and we note the *Serna* Court's reliance upon *Nave* and *Snaer* as well. *See* 2018-NMCA-074, ¶ 21.

{49} In *Nave*, the suspect received the following warning: "'You have the right to consult with a lawyer and have the lawyer with you during the questioning.'" 821 N.W.2d at 734. The defendant in *Nave* argued that the warning was defective because it did not inform him that he "had a right to appointed counsel both *before* and *during* interrogation and that the police did not inform him that he could exercise that right at any time." *Id.* The *Nave* Court first discussed United States Supreme Court precedent establishing that it "'never indicated that the rigidity of *Miranda* extend[ed] to the precise formulation of the warnings given.'" *Id.* at 735 (alteration in original) (quoting *Prysock*, 453 U.S. at 359). Ultimately, the *Nave* Court concluded that the warnings were sufficient because, "although the *Miranda* warnings did not expressly state that [the suspect] was entitled to appointed counsel

before questioning, that information was obviously implied from the warnings which the police read to him." *Id.* at 727.

{50} Similarly in *Snaer*, officers gave the following warning: "'You have a right to consult with a lawyer and to have a lawyer present with you while you are being questioned.'" 758 F.2d at 1342. The defendant argued that the warning was defective because he was not adequately informed of his right to consult with and have an attorney present before questioning began. *Id.* Relying upon *Prysock*, as *Nave* did, the Ninth Circuit in *Snaer* held that "the first part of that sentence read in the context of the latter half of the sentence does adequately convey notice of the right to consult with an attorney before questioning." *Id.* at 1343.

{51} The warnings given in *Nave* and *Snaer* are nearly identical in substance to the warning given to Chiaramonte: "You have the right to an attorney and have him/her present while you are being questioned." But Defendant Chiaramonte contends that *Nave* and *Snaer* are distinguishable because, in those cases, the suspect was advised that he had the right to "'consult'" with an attorney, instead of being advised of the general "'right to an attorney,'" and that this difference renders the warning that Chiaramonte received defective. According to Defendant Chiaramonte, the word "'consult' implies a more significant right to counsel" because "'consult'" means "consultation which . . . take[s] place prior to questioning." We disagree. We do not

33

view the word "consult" to denote any sort of temporal requirement or limitation. Consult merely means, as the definition cited in Defendant Chiaramonte's brief indicates, "'to get information or advice.'" A suspect could just as easily *consult* with a lawyer during, or even after, questioning. To accept the reasoning that *the right to an attorney* is insufficient, whereas *the right to consult with an attorney* is sufficient would run afoul of *Miranda*, which requires only that a suspect be advised of the "right to the presence of an attorney," 384 U.S. at 444, and would contradict subsequent United States Supreme Court precedent explaining that a warning does not have to be "the *clearest possible* formulation" to satisfy "*Miranda*'s right-to-counsel" requirement. *Powell*, 559 U.S. at 63.

{52}    The State contends that, even if Defendant Chiaramonte prefers the warnings given in *Nave* and *Snaer*, courts are not "looking to crown the best formulation [of a *Miranda* warning], declaring all others deficient." *Clayton*, 937 F.3d at 641. We agree. Courts are simply examining the warning to see "whether a 'commonsense reading' of the actual language employed meets the aims of *Miranda*." *Id.* (quoting *Powell* 559 U.S. at 64). As *Clayton* explained, engaging in a determination of what particular instruction best conveys a person's rights under *Miranda* "is reminiscent of the formalistic quibbling criticized in *Duckworth*, *Prysock*, and *Powell*. As those cases instruct, courts are not in the business of dictating the 'precise formulation of

34

the warnings given a criminal [suspect].'" *Id.* at 640 (quoting *Prysock*, 453 U.S. at 359).

{53}  We next address *Serna*'s application to Defendant Chiaramonte's case. The *Chiaramonte* Court of Appeals viewed the warning in a fashion similar to Defendant Chiaramonte's, relying upon *Serna* to support its holding that the warning was inadequate because it failed to convey Chiaramonte's full spectrum of rights under *Miranda*. *Chiaramonte*, No. A-1-CA-40543, ¶ 8. It reasoned that the warning given to Chiaramonte, like the warning in *Serna*, "did not convey that [Chiaramonte] had the right to counsel *before* being questioned." *Id.* The warning was improper, according to the Court of Appeals, because "[t]he word 'while' modifies the phrase 'you have the right to an attorney and have him present with you,'" thus "restrict[ing] that right to during the time [Chiaramonte] is being questioned." *Id.* We disagree that the word "while" modified the entire warning. The first clause ("You have the right to an attorney") advised Chiaramonte of a general right, and the second clause ("and have him/her present while you are being questioned") was merely an illustration or example of that right. More importantly, the *Chiaramonte* Court's view is at odds with the Court of Appeals' reasoning in *Serna*, cases relied upon in *Serna*, and the United States Supreme Court precedent we have outlined in this opinion.

35

{54} First, in *Serna*, the suspect did not receive a warning with two distinct clauses, as Chiaramonte did. Instead, the *Serna* suspect was advised only that he had the right to an attorney "'during any and all questioning.'" 2018-NMCA-074, ¶ 23. The *Serna* Court explained that such a warning contained no "'before questioning' language— or any other language, for that matter—by which [it] could infer that the full right to counsel was adequately conveyed." *Id.* ¶ 24. Additionally, it is worthwhile to highlight that there was a second *Miranda* warning given in *Serna*. This second warning was not dispositive because the statements at issue were given between the two warnings, rendering the first warning the focus of the Court's inquiry. *Id.* ¶ 30. Nonetheless, the *Serna* Court went out of its way to explain that it would "be remiss" if it did not highlight the contrast between the two warnings. *Id.* ¶ 26. ("Not only does the second *Miranda* warning advise [the d]efendant of his 'right to talk to a lawyer and . . . the right to have him present with [him] while being questioned' but also that '[i]f [he] cannot afford a lawyer, one will be appointed to [him] before any questionings.'" (alterations and omission in original)). Like the *Miranda* warning given to Chiaramonte in this case, the second *Miranda* warning in *Serna* contained both a general portion of the warning, "the 'right to talk to a lawyer,'" and a more specific portion of the warning, the suspect's "'right to have him present with [him] while being questioned.'" *Id.* Notably, the *Serna* Court did not identify the word

36

*while* as limiting the suspect's general "'right to talk to a lawyer.'"

{55}     Here, in contrast with the first *Miranda* warning given in *Serna* ("'You have the right to an attorney during any and all questionings.'" *Id.* ¶ 3.), the warning given to Chiaramonte did contain "other language . . . by which [one] could infer that the full right to counsel was adequately conveyed," *id.*, ¶ 24, namely, a general warning that Chiaramonte had "the right to an attorney." Further, the warning conveyed that Chiaramonte must understand his rights "[*b*]*efore* we ask you any questions" and explained that Chiaramonte had the ability to both exercise his rights and stop questioning "[a]t *any time*" (emphasis added).

{56}     Though informed by *Serna*, our holding is rooted in *Miranda* itself. In *Miranda*, the United States Supreme Court took no issue with a warning informing a suspect of "the right to consult with a lawyer and to have the lawyer with him during interrogation," *Miranda*, 384 U.S. at 471. Therefore, we do not take issue under federal law with the warning given to Chiaramonte, that he had "the right to an attorney and have him/her present while you are being questioned." We hold that Chiaramonte received sufficient warnings under *Miranda*. As United States Supreme Court *Miranda* jurisprudence requires, we reach our holding by concluding that the warnings "in their totality, satisfied *Miranda*," *Duckworth*, 492 U.S. at 205; *Powell*, 559 U.S. at 61, based on what they "reasonably conveyed," 559 U.S. at 62.

{57} Having concluded that both Atencio and Chiaramonte received adequate warnings under *Miranda*, we proceed to examine whether there was sufficient evidence to support Defendant Atencio's convictions.

**B.    Sufficiency of the Evidence**

{58} As amended, the State separated each of Defendant Atencio's CSCM charges into five-day increments "to differentiate" each count, starting on June 1, 2017, and concluding on October 12, 2017. Defendant Atencio contends that the evidence was insufficient to support twenty-one counts of CSCM.

**1.    Standard of review**

{59} "Sufficiency review is an essentially legal endeavor and addresses whether the government's case was so lacking that it should not have even been submitted to the jury." *Lente*, 2019-NMSC-020, ¶ 54 (internal quotation marks and citation omitted). In assessing the sufficiency of the evidence, this Court "'considers only the legal question whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (citation omitted). We will not "'reweigh the evidence [or] substitute [our] judgment for that of the jury.'" *State v. Graham*, 2005-NMSC-004, ¶ 7, 137 N.M. 197, 109 P.3d 285 (citation omitted). "Rather, the question is whether, viewing all of the evidence in a light most favorable to

upholding the jury's verdict, there is substantial evidence in the record to support *any* rational trier of fact being so convinced." *Id.* "'[S]ubstantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (alteration in original) (citation omitted).

**2.     Unique nature of sufficiency challenges in child sex abuse cases**

{60}    Assessing the sufficiency of the evidence in sex abuse cases involving children presents unique challenges because "[t]hese cases generally involve defendants who have regular access to and control over children whom they sexually abuse in secrecy for long periods of time." *Lente*, 2019-NMSC-020, ¶ 1. Additionally, the "child victims in these cases are usually the sole witnesses of the crimes perpetrated and, because of their age and the frequency of the sexual abuse to which they are subjected, cannot provide detailed accounts of the abuse." *Id.* Instead, we explained in *Lente*, children "typically testify to repeated acts of molestation occurring over a substantial period of time but are generally unable to furnish specific details, dates or distinguishing characteristics as to individual acts or assaults." *Id.* ¶ 55 (text only) (citation omitted).

{61}    Children often testify in such a manner for a number of reasons. "First, unlike adults, children cannot easily link experiences to dates or other specific points in time." *Id.* ¶ 56. "Second, when sexual abuse is repeated and frequent, isolating any

39

particular instance of abuse becomes a significant challenge for child victims." *Id.* ¶ 57. "Third, children may subconsciously desire to forget the abuse, and this may explain why they make forgetful, unretentive, and perhaps even unintentionally uncooperative witnesses." *Id.* ¶ 58 (internal quotation marks and citation omitted). Finally, "children have limited exposure to sexual activity and limited vocabularies and are, therefore, incapable of testifying about sexual anatomy and sexual encounters with the specificity expected of adults." *Id.* ¶ 59.

**3.      Examining the evidence**

{62}      In light of these challenges, the *Lente* Court adopted three requirements to determine the sufficiency of the evidence to support multiple convictions in child sex abuse cases. First, "the child victim must describe the proscribed act or acts committed with sufficient specificity to establish that unlawful conduct did in fact occur and to permit a jury to differentiate between the various types of sex acts to which the child victim was subjected." *Id.* ¶ 68. Second, "the child must describe the number of proscribed acts committed with sufficient certainty to support each of the counts alleged in the information or indictment." *Id.* ¶ 69. Third, "the child must describe the general time period in which the proscribed acts occurred." *Id.* ¶ 70.

{63}      The requirements in *Lente* focus on testimony from the child because, often, the child is the sole witness. *Id.* ¶ 1. But—contrary to the implication drawn by

40

Defendant Atencio in his briefing before this Court that the testimony from C.Y. alone must satisfy the requirements—the *Lente* Court's analysis makes clear that it is appropriate to consider testimony from other witnesses to satisfy each requirement. *See, e.g.*, *id.* ¶ 78 (relying upon the child's mother's testimony, in part, to satisfy the first requirement of the test); *see also Graham*, 2005-NMSC-004, ¶ 13 (explaining that appellate review for sufficiency of the evidence views "the evidence as a whole").

{64} Prior to assessing whether the evidence satisfies each requirement in detail, we first highlight the most significant evidence present in this case—evidence that was not present in *Lente*—Defendant Atencio's admissions. In his interview at the sheriff's department, Atencio admitted that he saw C.Y. every day during the four or five months when they lived next door to each other in Kirtland, that C.Y. "stayed the night lots of times" and that he got C.Y. ready for school almost every morning, that he had touched C.Y.'s penis between twenty and thirty times, and that he put C.Y.'s penis in his mouth once. *See State v. Martinez*, 2007-NMCA-160, ¶¶ 13-14, 143 N.M. 96, 173 P.3d 18 (highlighting the importance of the suspect's admission in examining the sufficiency of the evidence).

{65} Examining the evidence in the context of the *Lente* requirements leads to only one reasonable conclusion: the evidence was sufficient. Under the first *Lente*

41

requirement, C.Y. must have described the acts with specificity sufficient to establish that the conduct occurred and permit the jury to differentiate between the various sex acts. *Lente*, 2019-NMSC-020, ¶ 68. Defendant Atencio does not challenge his CSPM conviction, so the only alleged sex act at issue is second degree CSCM. Under the relevant portion of Section 30-9-13(B)(1), "[c]riminal sexual contact of a minor in the second degree consists of all criminal sexual contact of the unclothed intimate parts of a minor perpetrated . . . on a child under thirteen years of age." C.Y. was ten years old at the time of the abuse. C.Y. testified that Atencio "touched [his] private parts," including C.Y.'s penis, under his clothes every day that he went to Atencio's trailer. C.Y. further testified that Atencio did "bad stuff" to his private parts, like putting C.Y.'s penis in Atencio's mouth. A.Y., C.Y.'s sister, testified that, on one occasion, she saw Atencio's hands in C.Y.'s pants and C.Y.'s hands in Atencio's pants. The testimony established that Atencio forced C.Y. to engage in distinguishable sex acts. *See Lente*, 2019-NMSC-020, ¶ 78.

{66}     Second, C.Y. must have described the "number of sex acts committed with sufficient certainty to support each of the counts alleged in the indictment." *Id.* ¶ 79. Under this *Lente* requirement, "[s]tatements to the effect that specific acts of sexual abuse occurred 'twice a month' or 'every time we went camping' are sufficient." *Id.* ¶ 69. Again, Atencio admitted that he saw C.Y. every day during the four or five

42

months that they lived next door to each other in Kirtland. He admitted that C.Y. "stayed the night lots of times" and that he got C.Y. ready for school almost every morning. He admitted he touched C.Y.'s penis between twenty and thirty times and that he put C.Y.'s penis in his mouth once. C.Y. testified that he would go to Atencio's trailer "every day" and "every day" that C.Y. would go there, Atencio touched his penis under his clothing. In other words, C.Y. went to Atencio's house every day for four to five months. On each of those days, Atencio touched C.Y.'s penis. This testimony was sufficiently specific to support the jury's finding that Atencio touched C.Y.'s penis twenty-one times in five months.

{67} Under the final *Lente* requirement, this Court must evaluate whether C.Y. described the general time period in which the proscribed acts took place. *Id.* ¶ 83. As with the second requirement, the *Lente* Court provided examples: "The summer before my fourth grade" or "during each Sunday morning after he came to live with us" are sufficiently specific. *Id.* ¶ 70 (text only) (citation omitted). In *Lente,* the child testified that the abuse "occurred two or three times a week for almost the entirety of the forty-and-one-half month indictment period." *Id.* ¶ 83. The *Lente* Court held that this was sufficient because the child's "statement [was] not meaningfully different than a child's estimation that sex abuse occurred each summer or each camping trip." *Id.* The only difference between the two statements, the *Lente* Court

explained, was that "they prove she was subjected to significant amounts of abuse, amounts perhaps far in excess of what other children in these types of cases experience." *Id.* In our estimation, C.Y.'s experience appears to be close to that of the child in *Lente*.

{68}     But instead of the abuse occurring two or three times a week, as in *Lente*, C.Y. testified that he was abused "every day." Defendant Atencio is correct that C.Y. did not specifically "say every day for how long a [time] period." Defendant Atencio fails to address, however, that his own admission defines the general period of abuse. During his interview, Atencio told the police that C.Y.'s family lived next door to him for four or five months, but maybe longer. To the extent Atencio's own admission conflicts with C.Y.'s testimony that Atencio and C.Y. lived next door to each other for two and a half years, in reviewing the sufficiency of the evidence, we "indulge all [such] reasonable inferences in support of the verdict, and disregard all evidence and inferences to the contrary." *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829. Furthermore, the testimony provided by C.Y.'s parents establishes that C.Y. lived next door to Atencio from the beginning of June 2017 until October 2017.

{69}     And yet, according to Defendant, this evidence was "insufficiently specific" to support multiple counts because "C.Y. could not provide even the bare minimum,

44

the 'general time period' during which these alleged acts occurred." Instead, Defendant Atencio views the evidence as insufficient to support multiple counts because the State relied upon "course-of-conduct evidence" that "describes a pattern of events rather than discrete incidents." Defendant's argument again ignores *Lente*, where this Court recently explained that when "the prosecution persuades the jury to believe the child victim's testimony that he or she was subjected to multiple acts of sexual abuse over a long period of time, the prosecution will have necessarily proven beyond a reasonable doubt that the defendant committed a specific act." *Lente*, 2019-NMSC-020, ¶ 66 (internal quotation marks and citation omitted).

{70} Like the defendant in *Lente*, Defendant Atencio appears to argue that, because the conduct in this case "describes a pattern of events," i.e., conduct so egregious that a child could not differentiate among all of the different times/days when the alleged abuse occurred, Defendant Atencio is shielded from multiple charges. We explained that the defendant in *Lente*, like Defendant Atencio, "fails to acknowledge that [the child's] inability to provide specific details about [the] abuse is, in part, a product of [the defendant's] own making. He sexually abused [the child] so frequently that the details of particular abuse are clouded in [the child's] mind." *Id.* ¶ 77. As in *Lente*, Atencio "created a circumstance and now complains of its existence." *Id.* Defendant Atencio "seeks to transform his repeated violations of the

45

criminal laws into a shield." *Id.* We will not tolerate such an attempt. Viewing the evidence as a whole, there is substantial evidence in the record to convince *any* rational trier of fact that Atencio abused C.Y. every day for four to five months, thus satisfying the final requirement. The evidence presented in support of Defendant Atencio's convictions was sufficient.

## III.  CONCLUSION

{71}    For the foregoing reasons, we affirm the *Atencio* Court of Appeals in part and reverse in part. The warnings given to Atencio were adequate under *Miranda*, warranting such reversal. And there was sufficient evidence to support Defendant Atencio's convictions, warranting the affirmance. Because the warnings given to Chiaramonte were adequate under *Miranda*, we reverse the *Chiaramonte* Court of Appeals. We remand both cases to the district court for proceedings consistent with this opinion.

{72}    **IT IS SO ORDERED.**

_____

**JULIE J. VARGAS, Justice**

**WE CONCUR:**

_____

**DAVID K. THOMSON, Chief Justice**

_____

**MICHAEL E. VIGIL, Justice**


_____

**C. SHANNON BACON, Justice**


_____

**MARY MARLOWE SOMMER, Judge,**
**sitting by designation**

47